NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

ARIZONA SCHOOL RISK RETENTION TRUST, INC.,
as Subrogee for Chino Valley USD,
*Plaintiff/Appellee*,

*v.*

HONEYWELL INTERNATIONAL, INC.,
*Defendant/Appellant*.

_____

LEXINGTON INSURANCE COMPANY, as Subrogee of Arizona School
Risk Retention Trust, Inc. and Chino Valley Unified School District,
*Intervening Plaintiff/Appellee*.

No. 1 CA-CV 25-0574

FILED 07-02-2026

_____

Appeal from the Superior Court in Yavapai County
No. S1300CV202300817
The Honorable John David Napper, Judge
The Honorable Kristyne Schaaf-Olson, Judge *Pro Tempore* (*Ret.*)

**AFFIRMED**

_____

COUNSEL

Lang Thal King & Hanson PC, Scottsdale
By Jason A. Clark, Erika L. Johnsen
*Co-Counsel for Defendant/Appellant*

Quintaros Prieto Wood & Boyer PA, Scottsdale
By Anthony J. Fernandez, Shelby L. Hall
*Co-Counsel for Defendant/Appellant*

Kean Miller LLP, Baton Rouge, Louisana
By Jason R. Cashio (*pro hac vice*), Randal R. Cangelosi (*pro hac vice*)
*Co-Counsel for Defendant/Appellant*

Welker & Pauloe PLC, Phoenix
By Richard R. Carpenter, Christopher S. Welker, Scott G. Andersen
*Counsel for Plaintiff/Appellee Arizona School Risk Retention Trust, Inc.*

Denenberg Tuffley PLLC, Southfield, Michigan
By Alyssa J. Endelman, Brandon T. Brown (*pro hac vice*)
*Counsel for Intervening Plaintiff/Appellee Lexington Insurance Company*

---

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the Court's decision in which Presiding Judge Daniel J. Kiley joined. Judge Cynthia J. Bailey dissented.

---

**W I L L I A M S**, Judge:

¶1 Honeywell International, Inc. ("Honeywell") appeals from the superior court's order denying its motion to compel arbitration. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2 In 2010, Honeywell contracted with the Chino Valley Unified School District ("the District") to provide carbon dioxide sensors to several schools within the District. The sensors were installed in 2011. The contract between Honeywell and the District contained an arbitration clause which provided, in relevant part, that "any controversy or claim between [Honeywell] and [the District] arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration[.]"

¶3 Arizona School Risk Retention Trust, Inc. ("Arizona School") provides property insurance coverage to the District. Arizona School, in turn, holds a policy of reinsurance with Lexington Insurance Company ("Lexington"). In October 2021 and June 2022, fires occurred in a high school where Honeywell had provided carbon dioxide sensors pursuant to

its contract with the District. As subrogees of the District, Arizona School and Lexington (collectively "the Subrogees") alleged the sensors manufactured and sold by Honeywell were a cause of both fires. Arizona School sued Honeywell for negligence and product liability in September 2023, and Lexington intervened as a plaintiff in December 2023.

¶4        Honeywell provided its initial disclosure statement in January 2024 and answered both of the Subrogees' complaints by February 2024. In March 2024, the parties submitted a joint report and scheduling order to the superior court in which Honeywell "reserve[d] its right to future Arbitration if it is deemed to be applicable in this case." That same month, Honeywell notified Arizona School it intended to identify another company, Senseair, as a non-party at fault, and that if Arizona School "want[ed] to add a deadline for [Arizona School] to amend the Complaint to name Senseair, [Honeywell would] not object." Honeywell filed a notice of non-party at fault identifying Senseair, and the parties stipulated to stay the deadlines outlined in the scheduling order for the Subrogees to amend their complaints to name Senseair.

¶5        The Subrogees amended their complaints to add Senseair as a defendant in May 2024. Senseair, a Swedish company, moved to dismiss the amended complaints for lack of personal jurisdiction. The superior court held oral argument on Senseair's motion, which Honeywell attended. The court denied Senseair's motion in January 2025.

¶6        Two weeks later, Honeywell moved the superior court to compel arbitration and dismiss the case, arguing the arbitration clause in the contract between Honeywell and the District bound the Subrogees to arbitrate. The court denied Honeywell's motion on grounds that the arbitration clause did not apply and that Honeywell had waived its right to compel arbitration "by engaging in substantial conduct inconsistent with that purported right and inexcusably waiting over 14 months after filing its answer to file [its] motion [to compel arbitration]."

¶7        Honeywell timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101.01(A)(1).

**DISCUSSION**

¶8        Honeywell argues the superior court erred by denying its motion to compel arbitration. We review the court's ruling de novo. *Gray v. GC Servs., LP*, 256 Ariz. 480, 484, ¶ 9 (App. 2023).

**¶9**   Honeywell challenges the superior court's determination that it waived its right to compel arbitration. "[W]hether conduct amounts to waiver of the right to arbitrate is a question of law we review *de novo*." *Sec. Alarm Fin. Enters., L.P. v. Fuller*, 242 Ariz. 512, 515, ¶ 9 (App. 2017).

**¶10**   Though the contract between Honeywell and the District contains an Arizona choice-of-law provision, the parties agree that the Federal Arbitration Act ("FAA") and corresponding federal law apply to the issue of waiver. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269–70 (9th Cir. 2002) (concluding "that waiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls[,]" even when a contract contains a state choice-of-law provision); *see also Sec. Alarm*, 242 Ariz. at 516–17, ¶¶ 10–14 (applying federal law to the issue of waiver under the FAA).

**¶11**   In *Security Alarm*, we adopted the Ninth Circuit's rule governing waiver under the FAA.[1] 242 Ariz. at 517, ¶¶ 14–16. At that time, the rule was that "waiver of a right to arbitration under [the FAA] requires a showing of: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* at ¶ 14 (citation modified). We also noted that federal law generally favors arbitration. *Id.* at ¶ 16 ("In applying this standard, we keep in mind that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983))).

**¶12**   In 2022, the United States Supreme Court held in *Morgan v. Sundance, Inc.* that circuit courts may not "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's policy favoring arbitration." 596 U.S. 411, 416–17 (2022) (citation modified). Applying this principle, the Supreme Court eliminated the prejudice requirement from the waiver test. *Id.* at 416–17, 419. The Supreme Court also explained that the FAA's policy favoring arbitration "is merely

---

[1] As we noted in that case, "[i]n interpreting a federal statute, in the absence of guidance by the United States Supreme Court, Arizona courts will first look to a 'clear rule' issued by the Ninth Circuit Court of Appeals if that rule appears just," and will typically follow Ninth Circuit precedent "[w]hen other courts are divided on an issue of federal substantive law[.]" *Sec. Alarm*, 242 Ariz. at 517, ¶ 15.

an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts" and serves to make arbitration agreements "as enforceable as other contracts, but not more so." *Id.* at 418 (citation modified).

**¶13** Since *Security Alarm*, following *Morgan*, the Ninth Circuit has updated its waiver rule. Under the current rule, "a party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023). The Ninth Circuit has also recognized that *Morgan* did away with the "strong federal policy favoring enforcement of arbitration agreements"; instead, "[t]he federal policy is to treat arbitration agreements like other contracts." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) (citation modified). "The party opposing arbitration bears the burden of showing waiver," but "the burden is no longer heavy." *Id.* at 1014 (citation modified). "Because there is no concrete test for assessing whether a party took acts inconsistent with its right to arbitration, we consider the totality of the parties' actions." *Id.* at 1015 (citation modified). In this analysis, "we are tasked with evaluating a party's actions and asking whether those actions, even if seemingly commonplace and not an express disavowal of arbitral forums, evinced the party's partiality for a judicial resolution of the claims." *Hill*, 59 F.4th at 472.

**¶14** Applying the current waiver rule here, Honeywell argues that because it did not litigate the merits of the Subrogees' claims during the nearly fifteen months it took to move to compel arbitration, the superior court erred in determining that it acted inconsistently with its right to arbitrate. It is true that "a party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong*, 59 F.4th at 1015 (citation modified). But merits-based litigation is not the dispositive factor in the second prong of the waiver analysis that Honeywell makes it out to be—there are other ways for a party to act inconsistently with its right to arbitrate. Indeed, the Ninth Circuit has routinely considered factors other than merits-based litigation, such as whether a party consistently asserted its right to arbitration despite any delay in filing a motion to compel, *id.* at 1015–16, and the length of time a party took to file its motion to compel, *Van Ness Townhouses v. Mar Indus. Corp*, 862 F.2d 754, 759 (9th Cir. 1988). Importantly, "a party's extended silence and delay in moving for arbitration may indicate a conscious decision to continue to seek judicial judgment on the merits of the arbitrable

claims, which would be inconsistent with a right to arbitrate." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (citation modified).

¶15        Here, Honeywell waited approximately fifteen months after Arizona School's original complaint was filed to move to compel arbitration. In that time, Honeywell answered complaints and filed a joint report and scheduling order, which included deadlines for discovery and plans to conduct mediation with the Subrogees. Honeywell also filed a notice of a non-party at fault identifying Senseair, offered a stipulation to the Subrogees to amend their complaints to add Senseair, and participated in oral argument for Senseair's motion to dismiss for lack of personal jurisdiction.

¶16        These actions may not be overtly merits-based, but they still constituted time spent litigating in the judicial forum and "evinced . . . partiality for a judicial resolution" of the case. *Hill*, 59 F.4th at 472. Moreover, it was Honeywell that spurred the Subrogees to add Senseair as a defendant. It then waited until the superior court denied Senseair's motion to dismiss for lack of personal jurisdiction to move to compel arbitration, despite admittedly knowing it had the right to compel arbitration. In this way, Honeywell waited for judicial determination of a key issue before moving to compel arbitration.

¶17        While cases involving clearly merits-based motions may have that factor favoring waiver, that factor is not dispositive, and its absence here does not mean Honeywell did not waive its right to arbitration. Honeywell's actions were inconsistent with its asserted right to arbitration when viewed in their totality. *See Martin*, 829 F.3d 1118, at 1125–26 (finding waiver when defendants "spent seventeen months litigating the case" including preparing for discovery and preparing a "joint stipulation structuring the litigation"); *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. Appx. 663, 664 (9th Cir. 2014) ("[Defendants] waited eleven months after the lawsuit was filed to demand arbitration, actively litigating the case in district court. The parties conducted discovery and litigated motions, including a preliminary injunction and a motion to dismiss. Such activity is inconsistent with preserving the right to compel arbitration.").

¶18        Honeywell likens this case to *Armstrong*. In that case, the Ninth Circuit determined a defendant had not waived its right to compel arbitration when the defendant had engaged in only minimal discovery with the plaintiff (five interrogatories, twenty-eight pages of document production, and one stipulated protective order) and moved to compel arbitration within one year (approximately ten months) after the plaintiff

filed suit. *Armstrong*, 59 F.4th at 1013–14. The defendant in that case was also "consistently vocal about its intent to move to compel arbitration," disclosing a concrete plan to move to compel in a joint case management statement early in the case. *Id.* at 1013, 1015.

**¶19**        Honeywell's actions here differ from the defendant's actions in *Armstrong*. Though Honeywell contends it too "expressly reserved the right to arbitrate," thereby preserving its right to compel arbitration, Honeywell made no mention of arbitration, as an affirmative defense or otherwise, in its answers to the Subrogees' complaints.[2] The first time Honeywell mentioned its right to compel arbitration was in its initial disclosure statement to the Subrogees in January 2024, in which it merely stated that it "may have the right to arbitration" pursuant to its contract with the District. The first time Honeywell raised its right to compel arbitration to the superior court was in the joint report in March 2024, in which Honeywell stated it "reserve[d] its right to future arbitration if it is deemed to be applicable in this case." Honeywell made no other mention of arbitration to the superior court until it filed its motion to compel arbitration in January 2025. Honeywell was never "consistently vocal" about its "intent to move to compel arbitration" as the defendant was in *Armstrong*. *Id.* at 1015. Moreover, Honeywell waited five months longer than the *Armstrong* defendant to move to compel arbitration. *Id.* at 1013–14.

**¶20**        Finally, Honeywell argues it did not waive its right to compel arbitration because the case deadlines were stayed while Senseair's motion to dismiss was pending. But, as Arizona School points out, the case itself was not stayed, only the deadlines for discovery and other motions listed in the scheduling order. Nothing prohibited Honeywell from moving to compel arbitration in the fourteen months after it answered the Subrogees' complaints. Honeywell's argument on this point is unavailing.

**¶21**        Because we conclude Honeywell waived its right to compel arbitration, we do not address its other arguments that an arbitrator should have determined arbitrability or that the arbitration clause in the contract mandates arbitration. And because Honeywell is not the prevailing party

---

[2] Honeywell points out that it included its right to arbitration as an affirmative defense in its answers to the Subrogees' second amended complaints, which included amendments pertaining to adding Senseair as a defendant. While true, this point does not help Honeywell because Honeywell filed these answers alongside its motion to compel arbitration, not before.

on appeal, we deny its requests for attorneys' fees and costs under A.R.S. §§ 12-341 and 12-341.01.

**CONCLUSION**

¶22          We affirm.

**B A I L E Y**, J., dissenting:

¶23          I respectfully dissent.  Because the Subrogees did not meet their burden to show that Honeywell acted inconsistently with its right to compel arbitration, I would decline to find waiver.  *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) ("[T]he party opposing arbitration still bears the burden of showing waiver . . . .").

¶24          I agree with the majority that the *Armstrong* factors guide our determination whether Honeywell waived its right to compel arbitration: "a party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court."  *Supra* ¶ 14 (quoting *Armstrong*, 59 F.4th at 1015 (citation modified)).  But I disagree with the majority's assessment of the factors.  Even assuming Honeywell satisfied the first prong by making an "intentional decision" not to move to compel arbitration, in assessing the totality of the circumstances, I disagree that the Subrogees met their burden of proof to show that the elements of the second prong were met: that Honeywell (1) actively litigated (2) the merits of the case (3) for a prolonged period of time (4) in order to take advantage of being in court.  *Armstrong*, 59 F.4th at 1015.

¶25          First, the record is clear that except for its appearance at the November 2024 oral argument on Senseair's motion to dismiss, Honeywell engaged in no litigation activity after the superior court granted the parties' joint motion to stay the scheduling order deadlines in May 2024.  Honeywell's appearance to observe the oral argument alone cannot support a finding that it "actively" litigated the case.

¶26          But even assuming Honeywell's oral argument appearance could be considered "litigation," it did not go to the "merits of the case." Honeywell's notice of other potential parties is not equivalent to asking the

court to decide issues underlying the merits of this case: duty, breach, causation, damages, or defenses.

¶27 The majority casts Honeywell's efforts to bring Senseair into the litigation as a "merits" issue that tips the scales for its conclusion that Honeywell "used" the court to decide the claims against it. *Supra* ¶¶ 15-16. At worst, the superior court's determination of which entities had a seat at the litigation table was necessary to *all* parties. This is especially true given Honeywell's non-party at fault allegation that Senseair produced the very component the Subrogees alleged caused its' damages. And the majority's framing ignores that Honeywell had to file any non-party at fault notice within the 150-day deadline required by Arizona Rule of Civil Procedure ("Rule") 26(b)(5). I therefore disagree with the majority's conclusion on this element because I see no record evidence that Honeywell's conduct "evinced [its] partiality for a judicial resolution of the claims." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 472 (9th Cir. 2023).

¶28 Next, I credit Honeywell's contention that this case is more analogous to *Armstrong* than to the cases cited by the majority where waiver was affirmed. *Supra* ¶¶ 13-14. In surveying the relevant cases, the majority correctly observes that engaging in merits-based litigation becomes a less important factor when the party seeking to compel arbitration "consistently asserted its right to arbitration despite any delay in filing a motion to compel." *Supra* ¶ 14 (quoting *Armstrong*, 59 F.4th at 1015-16). But while Honeywell did not notice arbitration as an affirmative defense as the defendant did in *Armstrong*, the *Armstrong* parties actively litigated the merits of the case by engaging in discovery. *Armstrong*, 59 F.4th at 1016. Here, by contrast, the scheduling order was stayed before any merits-based litigation occurred, and Honeywell could take no merits-related action until the stay was lifted in January 2025.

¶29 As to the "prolonged period of time" element, the majority heavily weighs the "nearly 15 months" that elapsed between the original complaint filing in September 2023 and Honeywell's motion to compel arbitration in January 2025. *Supra* ¶¶ 14, 15, 19. Because we must examine the totality of the circumstances, I consider not only the length of time, but what action the parties took during that time, which party controlled the delay, and whether Honeywell acted to further the delay to its advantage.

¶30 Here, the parties spent a considerable portion of the 14 months arranging the seats at the litigation table. After Honeywell answered the original complaint in November 2023, Lexington moved to intervene and filed its own complaint. Honeywell answered Lexington's

complaint in February 2024. Those three months were not Honeywell's delay. The parties then filed a joint report and scheduling order in March 2024. In the joint report, Honeywell raised the arbitration clause and reserved the right to invoke it "if applicable."

¶31 In early April 2024, Honeywell noticed Senseair as a non-party at fault. The majority characterizes Honeywell's notice as a tactic to "spur[] the Subrogees to add Senseair as a defendant," and implies that Honeywell gained an advantage by inducing the Subrogees to involve the court but fails to explain how Honeywell's compliance with Rule 26(b)(5) could influence the Subrogees' litigation strategy. *Supra* ¶ 16. By the end of April, the Subrogees moved to amend their complaints to add Senseair. Soon after, the parties stipulated to stay the scheduling order deadlines they had agreed to just one month before. Further disclosure, discovery, dispositive motions, mediation, and other case-related dates were put on hold while the Subrogees served Senseair and the parties awaited Senseair's answer.

¶32 In June 2024, the Subrogees served Senseair. In early September 2024, Senseair moved for dismissal for lack of personal jurisdiction under Rule 12(b)(2) in lieu of filing an answer. The Subrogees objected, while Honeywell stayed on the sidelines. Four months passed while the Subrogees and Senseair briefed the dismissal motion and engaged in oral argument. No party moved to lift the scheduling order stay during this time. The superior court lifted the stay on the same day it denied Senseair's motion to dismiss in January 2025. The three-month wait for Senseair to file its dismissal motion and the additional four months the superior court took to resolve the Subrogees' effort to bring Senseair into the case cannot be attributed to Honeywell.

¶33 With the litigation table set, Honeywell moved to compel the Subrogees to arbitration just fifteen days after the court lifted the scheduling order stay. Of the 14 months that passed between Honeywell answering the original complaint and moving to compel arbitration, I would count only five months toward evaluating Honeywell's arbitration request delay. Based on that amended timeframe, I cannot find Honeywell waived their right to seek to enforce the arbitration clause.

¶34 Relatedly, the Subrogees argue Honeywell could have moved to compel arbitration at any time because only the scheduling order deadlines and not the case itself was stayed. While true, with the substantive deadlines stayed, the fact remains that Honeywell did not file a merits motion, litigate a discovery dispute, disclose an expert witness, or

cause the Subrogees to do the same during this time. And a closer look at the cases the majority relies on reveals no case in which the court found waiver based on the passage of time alone when the moving party had not also affirmatively sought merits relief.

¶**35** Based on Honeywell's 14-month "delayed" arbitration motion, the majority likens this case to *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988). *Supra* ¶ 14. I find that comparison unconvincing. The party seeking arbitration in *Van Ness* waited two years to compel arbitration and, based on that party's misunderstanding of the law, sought to avoid the severance of her arbitrable and non-arbitrable claims by deciding not to move to compel arbitration. *Id.* at 759. Here, even without considering the scheduling order pause, Honeywell waited far less than two years to compel arbitration, and when it moved to compel arbitration, it did so as to all claims. Referring to *Van Ness*, *Armstrong* emphasized both the length of time *and* the merits action when it observed that "we have held that a defendant waived the right to arbitrate after litigating in federal court for two years *and then* filing a motion to dismiss on the merits." 59 F.4th at 1015-1016 (emphasis added).

¶**36** The majority observes that a "party's extended silence and delay in moving for arbitration may indicate a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims." *Supra* ¶ 14 (quoting *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (citation modified)). But in *Martin* the defendants participated in the case for 17 months, during which time they sought a substantive ruling on a key merits issue, answered discovery, and conducted a deposition. *Id.* at 1126. The majority also relies on *Kelly v. Pub. Util. Dist. No. 2*, 552 F. App'x 663 (9th Cir. 2014), in which the defendants were found to have waived arbitration after only 11 months of case participation. *Supra* ¶ 17. Yet like the defendants in *Martin*, the *Kelly* defendants conducted discovery and litigated merits motions, including a motion to dismiss and a preliminary injunction. *Id.* at 664. Honeywell undertook no similar merits-based action here.

¶**37** As to the last element, the majority cites Honeywell's non-party at fault notice as evidence of Honeywell's effort to "take advantage of being in court." *Supra* ¶¶ 14, 15. In my view, this singular act is insufficient to show Honeywell involved the court in the merits of the case. To be sure, Honeywell may benefit from Senseair's inclusion in the litigation, but the decision to name and serve Senseair was not Honeywell's. Nor was Honeywell involved in litigating whether Senseair was a proper party, but for its appearance to observe the oral argument. With no record evidence

of Honeywell seeking a ruling on the underlying claims or acting in contradiction to an intent to arbitrate, I would not set aside a contracted-for arbitration clause based solely on Honeywell's delayed filing.

¶38        For these reasons, I decline to join the majority in its holding that Honeywell waived its right to compel arbitration. I take no position on whether the arbitration agreement applies to the Subrogees' claims, or whether the question of arbitrability should have been decided by the superior court in the first place.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**:        JR